## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON MANSKEY,                           )
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )   **Case No. 3:16-CV-01368-MAB**
                                         )
RICHARD WIGGS, STEPHEN JONES,            )
JEFFREY STALLINGS, JOHN HOBBS,           )
AND JACOB HORN,                          )
                                         )
            Defendants.

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Jason Manskey, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges Eighth Amendment claims against correctional officers at Shawnee Correctional Center ("Shawnee") for alleged unauthorized use of force and failing to ensure Plaintiff received medical care for his resulting injuries (Doc. 6). Now before the Court is Defendants Hobbs and Horn's motion for summary judgment and supporting memorandum (Docs. 101, 102). For the reasons set forth below, the Court DENIES Defendants' motion for summary judgment.

### PROCEDURAL BACKGROUND

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. §1983 on December 20, 2016 (Doc. 1), alleging Eighth and Fourteenth Amendment constitutional violations against officials at Shawnee (Doc. 1). Following a threshold review of the complaint pursuant to 28 USC § 1915A, Plaintiff was permitted to proceed on two Eighth

Page 1 of 21

Amendment Claims: 1) an Eighth Amendment claim against Correctional Officer Wiggs and Correctional Officer Jones for using excessive force against Plaintiff on November 14, 2014, and 2) an Eighth Amendment claim against Correctional Officer Wiggs, Correctional Officer Jones, and Correctional Officer Stalling for using excessive force against Plaintiff on December 28, 2014 (Doc. 6, p. 4). In this threshold review, entered on January 11, 2017, the Court instructed Plaintiff that individuals mentioned, but not specifically named as defendants, would be dismissed without prejudice (*Id*. at 7). One of these individuals named, but not included in Plaintiff's complaint caption, was current Defendant Hobbs (Doc. 6).

Defendants filed a motion for summary judgment on the issue of exhaustion on October 19, 2017, and soon after, Plaintiff filed a motion for leave to amend his complaint on October 24, 2017 to add additional defendants, including Hobbs, and facts (Doc. 33). Defendants filed a motion to stay the motion for leave, pending the result of the motion for summary judgment (Doc. 35). The Court conducted a *Pavey* hearing on November 30, 2017 (Docs. 30, 31, 47). A Report and Recommendation was issued, which the Court adopted, denying Defendants' motion for summary judgment for failure to exhaust administrative remedies (Docs. 49, 53). The Court granted the motion to stay, detailing that it would decide Plaintiff's motion to amend after the Report and Recommendation on the issue of exhaustion was issued (Doc. 51).

Plaintiff was appointed counsel on July 10, 2018 (Doc. 57), and the Court denied, without prejudice, his motion for leave to amend since he was recently appointed counsel (Doc. 57). Plaintiff, through counsel, filed a motion for leave to file an amended complaint

on September 20, 2018 (Doc. 68), where Plaintiff requested to both add Defendant Hobbs and substitute Defendant Horn for Defendant Stallings (Doc. 68). In this motion, Plaintiff detailed how the claims against both Defendants Hobbs and Horn related back to the original claims under Federal Rule 15(c)(1)(C). Defendants did not file an objection or otherwise oppose Plaintiff's motion to amend, which was then granted on November 16, 2018 (Doc. 71). Plaintiff filed his amended complaint on November 20, 2018 and included Defendants Hobbs and Horn (Doc. 72). Defendants Hobbs and Horn filed their answer to the amended complaint on February 4, 2019 (Doc. 88).

Defendants Hobbs and Horn filed their motion for summary judgment on July 8, 2019 (Doc. 101) at the end of the discovery deadline (*See* docket entry on June 10, 2019 setting discovery due by July 3, 2019). Plaintiff filed his response on August 7, 2019 (Doc. 104).

## FACTUAL BACKGROUND

Plaintiff's claims stem from his experience at Shawnee from approximately November 2014 through December 2014. On November 14, 2014, Defendants Hobbs, Wiggs, and Jones allegedly attacked Plaintiff (Doc. 102, p. 2). Plaintiff was taken from his cell to segregation processing and was thrown onto the ground by Defendant Hobbs (Doc. 104-1, p. 2). While on the ground, Defendant Wiggs stood on Plaintiff's forehead and Defendant Jones held Plaintiff's arms while Defendant Hobbs punched Plaintiff in the chest multiple times (*Id.*).

On December 26, 2014, Defendant Wiggs and other correctional staff allegedly entered Plaintiff's cell and threatened to physically attack him (Doc. 72, p. 3). In a

declaration submitted with his response to Defendants' motion for summary judgment, Plaintiff details that he was taken from his cell in segregation by a correctional officer he did not recognize who was not wearing a nametag on December 28, 2014 (Doc. 104-1). That unnamed correctional officer dragged Plaintiff to segregation processing where the lights were partially off (Doc. 104-1, pp. 2-3). Plaintiff testified that he was physically attacked by Defendants Wiggs, Jones, and the unnamed correctional officer for a total of two to three minutes (*Id.*). Plaintiff was unable to identify the unnamed correctional officer because of the lack of lighting in the room and the unnamed correctional officer was not wearing a nametag (*Id.* at 3).

Plaintiff testified that between December 29, 2014 and January 3, 2015, he filled out a grievance regarding the December 28, 2014 incident and placed it in his door while he was in segregation (Doc. 49, p. 2). Soon after placing it in his door, Defendant Jones ripped it up (*Id.*). Plaintiff reported the December 28, 2014 attack to Lauren Oestmann in mental health, who reported it to internal affairs via email on January 8, 2015 (Doc. 104-2, pp. 4-5, 8). On or around January 10, 2015, during an internal affairs investigation, Plaintiff informed internal affairs he had been beaten by Defendants Wiggs, Jones, and Hobbs on November 14, 2014 and by Defendant Wiggs, Jones, and the unnamed officer on December 28, 2014 (Docs. 102-2, p. 2; 104-1, p. 3). Internal affairs investigated Plaintiff's claims by discussing the matter with Defendant Horn (Doc. 104-3, p. 5). Defendant Horn stated he was present in segregation on the date and time of the December 28, 2014 attack, but denied ever becoming physical with Plaintiff (*Id.*).

Plaintiff filed two grievances with the Administrative Review Board ("ARB") about his claims (Doc. 102-1). These grievances were returned to Plaintiff on or around February 23, 2015 for not following proper grievance procedure (Doc. 102-2). Plaintiff was instructed to provide responses from his counselor and grievance officer at the facility level (*Id.*).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.   *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7thCir. 2014) (citing FED. R. CIV. PROC. 56(a), *see also Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012)).   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *See also Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). The moving party is entitled to judgment where the non-moving party "has failed

to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## DISCUSSION

In their motion for summary judgment, Defendants Horn and Hobbs argue that Plaintiff's claims against them are barred by the applicable two-year statute of limitations. Additionally, they argue the legal doctrine of relation back under Federal Rule 15(c)(1)(C) does not apply because there was no mistake as to Defendants Hobbs and Horn's identities (Doc. 102, p. 3). Lastly, Defendants argue that Plaintiff should not benefit from equitable tolling because he has not diligently pursued his claims and there were no extraordinary circumstances that prevented him from bringing his claims in a timely manner (*Id.* at 3).

Plaintiff disagrees, stating that that a number of legal doctrines apply that act as exceptions to or extensions of the two-year statute of limitations, including relation back, which Plaintiff has argued in multiple filings since 2018 (Doc. 104). In addition, Plaintiff argues that Defendants' arguments as to the appropriate statute of limitations have been waived since Defendants did not appropriately plead these arguments as affirmative defenses in their answer to the amended complaint (Doc. 104, pp. 5-6). Plaintiff's waiver argument could be determinative of the issues presently before the Court, so the Court will address that argument first.

I.      Waived Statute of Limitations Argument

Plaintiff asserts that Defendants have waived their arguments related to the applicable statute of limitations because they did not plead it as an affirmative defense as required by Federal Rule of Civil Procedure 8(c). Therefore, the Court's analysis as to Defendants' arguments should stop there because their motion for summary judgment should be summarily denied (Doc. 104, p. 5).

Rule 8(c) "requires a defendant to plead a statute of limitations defense and any other affirmative defense in his answer to the complaint." *Venters v. Cty. of Delphi*, 123 F. 3d 956, 967 (7th Cir. 1987). However, the Seventh Circuit has repeatedly held that "delay in asserting an affirmative defense waives the defense *only if* the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005).   This harm cannot be established simply through a showing that the case has progressed significantly. District Courts and the Seventh Circuit have repeatedly held that as long as a plaintiff has the opportunity to respond to a statute of limitations argument, even if asserted after the answer to the complaint, that plaintiff is not prejudiced. *Neuma, Inc. v. Wells Fargo & Co.*, 515 F.Supp. 2d 825, 849 (N.D. Ill. 2006), citing *Curtis*, 436 F.3d at 711 (finding no waiver where defendant raised a failure-to-exhaust defense for the first time on summary judgment, but plaintiff was able to confront the defense in its response to defendant's motion for summary judgment); *Blaney v. United States,* 34 F.3d 509, 512 (7th Cir.1994) (rejecting plaintiff's argument that defendants waived a statute of limitations defense by raising it for the first time in their motion to dismiss); *Dresser Indus., Inc. v. Pyrrhus AG,* 936 F.2d 921, 928 (7th Cir.1991) (noting that while defendant's Statute of

Frauds defense "technically" should have been raised in its answer rather than its motion for judgment on the pleadings, the defense was not waived where plaintiff was allowed to respond in an additional memorandum).

Defendants Horn and Hobbs filed their joint answer to Plaintiff's amended complaint on February 4, 2019 (Doc. 88) and did not assert their statute of limitations argument until their motion for summary judgment was filed on July 8, 2019 (Docs. 101, 102). While it would have been preferable for Defendants to plead this argument as an affirmative defense, failing to assert a statute of limitations argument as an affirmative defense is "not [always] fatal." *Blaney v. U.S.*, 34 F.3d 509, 512 (7th Cir. 1994).   Defendants did not assert this argument for the first time in a reply brief, for example, which would not have allowed Plaintiff a response. *See generally Venters,* 123 F.3d. As Plaintiff has had the chance to respond to Defendant Hobbs and Horn's statute of limitations arguments, it is clear that Plaintiff has not been harmed. Accordingly, the Court will examine the parties' remaining summary judgment arguments.

II.   <u>Applicable Statute of Limitations Period</u>

Both Plaintiff and Defendant agree that a two-year statute of limitations period applies to the present matter; however, the parties disagree when, exactly, this period ended and whether it was tolled while Plaintiff exhausted his administrative remedies.

Defendants seem to argue that there are separate timelines for Defendant Hobbs and Horn. Defendants contend that the claims against Defendant Hobbs accrued on November 14, 2014. Since Plaintiff did not file his complaint until December 20, 2016,

more than two years after November 14, 2014, he is barred from bringing claims against Defendant Hobbs (Doc. 102, p. 6). Additionally, Defendants argue that Plaintiff was instructed by the Court to name Hobbs as a Defendant in its Merit Review Order (Doc. 6). Since Plaintiff did not name Hobbs as a Defendant until much later, which Defendants argue is an example of Plaintiff affirmatively disregarding the Court's instructions, his claims against Hobbs are untimely and barred (Doc. 102, p. 8).

As for Horn, Defendants argue that Plaintiff's claims against him accrued on December 28, 2014 (Doc. 102, p. 9).   So, while Plaintiff's complaint was timely as to the claims against Defendant Horn when it was filed on December 20, 2016 (Doc. 1), Defendants argue that he is a "John Doe" defendant and the naming of a John Doe defendant does not toll the two-year statute of limitations (Doc. 102, p. 9). Plaintiff did not name Defendant Horn as a defendant until November 20, 2018, which is beyond the two-year statute of limitations. *Id.*

Plaintiff, on the other hand, argues that the grievance process he utilized tolled the statute of limitations for all Defendants and that, generally, his claims against both Defendants Horn and Hobbs are timely. Plaintiff is correct. Defendant Horn's arguments that he is a "John Doe" defendant will be addressed in the next section as they are better suited under the doctrine of relation back.

The applicable statute of limitations period for actions brought pursuant to 42 U.S.C. § 1983 is a state's period for personal injury torts. *See Kalimara v. Ill. Dept. of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). In Illinois, that period is two years. *See Woods v. Illinois Dept. of Children and Family Svcs.*, 710 F.3d 762, 765-766 (7th Cir. 2013); 735 ILCS

§ 5/13-202. Determining the exact statute of limitations period is a bit more complicated, though, as the statute of limitations is tolled while a prisoner exhausts the administrative grievance process. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (citing *Johnson v. Rivera*, 272 F.3d 519, 521–22 (7th Cir. 2001)). This Court previously found that Plaintiff exhausted his administrative remedies through a combination of a formal investigation, subsequent grievances, and Plaintiff's consistent informal complaints (Doc. 49, p. 7). Additionally, while Defendants would prefer that both Hobbs and Horn have different statute of limitations periods, the Court previously found that while Plaintiff details two separate incidents in his complaint   (one that occurred on November 14, 2014 and one on December 28, 2014), they are both part of a "continuing violation." *Id.* Consistent with its prior Orders, the Court will continue to analyze Plaintiff's claims as falling under one period of time as a continuing violation.[1]

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing suit under § 1983. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). According to the statute, no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

---

[1] The Court explained, in examining Defendants' motion for summary judgment on the issue of exhaustion, that while Plaintiff did not file a formal grievance for the November 14, 2014 assault, he did file a series of formal and informal grievances regarding his treatment as a whole and the December 28, 2014 incident (Doc. 49, pp. 7-8). As Plaintiff also feared retaliation for grieving his treatment, the Court found that his formal and informal combination of complaints was sufficient to put the prison on notice of his lawsuit prior to filing. *Id.* Accordingly, Defendants' motion for summary judgment on the issue of exhaustion was denied.

administrative remedies as are available are exhausted. *Id. See also Smith v. Zachary*, 255 F.3d 446 (7th Cir.2001). The statute of limitations period is tolled while an inmate attempts to exhaust his administrative remedies as he is required to by the PLRA. *See Johnson v. Rivera*, 272 F.3d 519, 521-522 (7th Cir. 2001).

The question, then, is what is the appropriate length of the tolling period during which Plaintiff is deemed to have been attempting to exhaust his administrative remedies. Plaintiff detailed previously to this Court that he filled out a grievance regarding the December 28, 2014 incident at some point between December 29, 2014 and January 3, 2015 (Doc. 49, p. 2). Plaintiff filled out an emergency grievance addressed to the Warden shortly after this and then filled out another grievance dated January 26, 2015 (*Id.* at 3). The Report and Recommendation issued by Magistrate Judge Wilkerson, which the Court adopted, held that Plaintiff exhausted his administrative remedies through this series of both formal and informal grievances. It appears that Plaintiff's last official grievance was submitted on January 26, 2015 (Doc. 102-1). Plaintiff's grievances were returned by the Administrative Review Board on February 23, 2015 (Doc. 102-2).  It is reasonable to assume, then, that the tolling period ended on or around February 23, 2015, as the record indicates that Plaintiff did not take further action to attempt to grieve the November and December 2014 assaults after the grievances were returned. Accordingly, Plaintiff's original complaint, filed on December 20, 2016, was within the two-year statute of limitations and is, therefore, timely.

III.    <u>Relation Back</u>

It is clear to the Court and the parties that the applicable statute of limitations on

a § 1983 claim in Illinois is two years. *E.g.*, *Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). It is undisputed that Plaintiff added Defendants Horn and Hobbs in an amended complaint filed on November 20, 2018, approximately two years after his original complaint was filed on December 20, 2016 and almost four years since the incidents at issue occurred (Doc. 102). The last outstanding issue, then, is whether the amended complaint with new claims against Defendant Hobbs and Horn relates back to the original complaint for purposes of the two-year statute of limitations.

An amended complaint seeking to add new defendants after the two-year limitations period has expired is time-barred unless, pursuant to Federal Rule of Civil Procedure 15(c)(1)(C), it relates back to the earlier, timely-filed complaint. In order to relate back, the claims against the newly-added defendant must arise out of the same conduct or transaction set forth in the original complaint, and plaintiff must also show that, within the period provided by Rule 4(m) for serving the summons and complaint, the newly-added defendant:

    (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(C).

In 2010, the Supreme Court significantly changed the law related to relation back under Federal Rule of Civil Procedure 15(c)(1)(C). *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). The Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, "changed what we and other courts had understood . . . to be the proper standard for deciding

whether an amended complaint relates back to the date of the filing of the original complaint." *Joseph v. Elan Motorsports Technologies Racing Corp.*, 638 F.3d 555, 559 (7th Cir. 2011) (citing *Krupski*, 130 S.Ct. 2485). Courts previously focused on what the plaintiff knew or should have known regarding the identity of the proper defendant at the time of filing their original complaint. *Joseph*, 638 F.3d at 559; *see also Krupski*, 560 U.S. at 541, 548. Prior to *Kruspki*, the Seventh Circuit held that the lack of knowledge regarding the defendant's identity was not a "mistake" for purposes of relating back – effectively barring John and Jane Doe cases. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006)(citing *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000)); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). Pre-*Krupski,* the long-standing rule was that "[a] plaintiff's ignorance or misunderstanding about who is liable for his injury is not a 'mistake' as to the defendant's 'identity.'" *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) (where the plaintiff misunderstood which of two railroads was liable for his injuries and named the wrong railroad as the defendant, there was no "'mistake' concerning 'identity'" within the meaning of Rule 15(c); plaintiff "simply lack[ed[ knowledge of the proper party to sue.")

*Krupski* made clear, however, that the focus should instead be on what the prospective defendant knew or should have known during the Rule 4(m) period. *Krupski*, 560 U.S. at 548; *Joseph*, 638 F.3d at 559. "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations

period only because the plaintiff misunderstood a crucial fact about his identity." *Krupski*, 560 U.S. at 550. *Krupski* defined mistake broadly as "an error, misconception, or misunderstanding; an erroneous belief"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts." *Id.* at 548 (quoting Black's Law Dictionary 1092 (9th ed. 2009) and Webster's Third New International Dictionary 1446 (2002)). And the Court stressed that a plaintiff's knowledge of a party's existence does not automatically equate to absence of mistake. *Id.* at 548, 549. For example, a plaintiff might know that two parties exist but choose to sue the wrong one based on a misunderstanding about parties' statuses or roles in the events that gave rise to the lawsuit. *Id.* at 548–49. In that instance, the plaintiff has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. *Id.* On the other hand, there is no mistake when the plaintiff "mak[es] a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties." *Id.* at 549.

The parties in the present matter do not contest whether the amended complaint arises out of the same conduct as detailed in the original pleading (Fed. R. Civ P. 15(c)(1)(C)); rather, the parties disagree about whether Defendants Hobbs and Horn knew, or should have known, that this action would have been brought against them, but for Plaintiff's mistake concerning the proper parties' identities.

Defendants argue extensively about Plaintiff's knowledge in their motion for summary judgment, asserting that Plaintiff did not lack information as to Defendants

Horn and Hobbs's identities, relying heavily on precedent from before the *Krupski* decision in 2010 when the law significantly changed.[2]  As the Court previously outlined, the appropriate inquiry is into Defendants' knowledge of the claims and if they knew that this action would have been brought against them absent a mistake by the Plaintiff, not Plaintiff's knowledge or mindset. Plaintiff argues that Defendant Hobbs had knowledge of this lawsuit as he was named in Plaintiff's original complaint (Doc. 1) and that Defendant Horn knew, or should have known, within the Rule 4(m) time period (90 days from when the complaint is filed) of this lawsuit (Doc. 104).[3]  Plaintiff is correct.

### A.  Defendant Hobbs

It is clear from the record that Defendant Hobbs knew, or should have known (within the Rule 4(m) period), that but for Plaintiff's error, this action would have been brought against him. All of the Defendants are represented by the Attorney General's office. Plaintiff named Defendant Hobbs in his original Complaint and details how Defendant Hobbs participated in the attack by punching him in the chest multiple times (Doc. 1, p. 5). Although Plaintiff detailed his interactions with Defendant Hobbs and claims against him, he did not include him in the caption; therefore, the Court dismissed Defendant Hobbs in its threshold Order (Doc. 6, p. 7). As Plaintiff was proceeding *pro se* at that time, this appears to be the mistake of someone unfamiliar with the legal system.

---

[2] For example, Defendants argue, "The Seventh Circuit has also held that a plaintiff's lack of knowledge about a defendant's identity is not a mistake within the meaning of Rule 15(c). *See Hall v. Norfolk S. Ry. Co.*, 469 F. 3d 590, 596 (7th Cir. 2006); *Baskin v. City of Des Plaines*, 138 F. 3d 701, 704 (7th Cir. 1998)." *See* Doc. 102, p. 4.

[3] The Complaint was filed on December 20, 2016, so 90 days after that is March 20, 2017.

Defendants argue that because Plaintiff did not add Defendant Hobbs when instructed to do so by the Court in its Merit Review Order (Doc. 6), he essentially waived those arguments against Defendant Hobbs. Not so. The record shows that Plaintiff repeatedly attempted to correct his error, which was originally just a slip of the pen or a common error of a *pro se* litigant. Plaintiff filed a motion for leave to add Defendant Hobbs, which Defendants opposed due to their outstanding motion for summary judgment on the issue of exhaustion, on October 24, 2017 (Doc. 33). It was not until the exhaustion summary judgment motion was decided that the Court appointed Plaintiff an attorney and granted him leave to file an amended complaint. At that time, Plaintiff added Defendant Hobbs. This timeline demonstrates that Defendant Hobbs likely had knowledge of this lawsuit and that he would have been included as a Defendant, but for Plaintiff's mistake. Accordingly, the claims against Defendant Hobbs relate back to the original complaint and are timely.

## B. Defendant Horn

The analysis for Defendant Horn is less straightforward. Plaintiff contends he was at a distinct disadvantage in identifying the third correctional officer who participated in the attack on December 28, 2014 because the attack took place in the dark and the unknown correctional officer was not wearing a nametag (Doc. 104, p. 14). Plaintiff thought it was Officer Stallings and, therefore, included his name as a Defendant in his complaint (Doc. 1). Defendants argue a slightly tangential argument. They assert that Officer Stallings was not a substitute for Defendant Horn and Defendant Horn was, in fact, the "unknown fourth correctional officer," which would mean he was, essentially, a

"John Doe" or unnamed Defendant (Doc. 102, pp. 5-6). Because of that "John Doe" status, Defendants argue relation back does not apply.

Before the Supreme Court ruling in *Krupski*, the "mistake" inquiry was simple. The Seventh Circuit "repeatedly reiterated" that relation back on the grounds of mistake "does not apply where the plaintiff simply lacks knowledge of the proper defendant," applying this standard to both mistakenly named defendants and those named with placeholders, like "John Doe." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). It is not clear whether this so-called John Doe rule survived *Krupski*. The Seventh Circuit has not directly addressed the impact of *Krupski* on John Doe defendants and District Courts have come to differing conclusions. *See Sharp v. Keeling*, No. 3:16-cv-01083, 2018 WL 1833150 *5 (S.D. Ill. Jan. 5, 2018).[4]  Defendants argue that John Doe defendants are not covered under Rule 15(c)(1)(C), and the post-*Krupski* analysis. And as previously noted, there are differing conclusions on this issue by district courts, one thing is clear: the Court's focus should be on a defendant's state of mind and knowledge and not the plaintiff's, unless it further helps identify the defendant's state of mind.

Here, the Court must determine whether Defendant Horn knew or should have known during the Rule 4(m) period that he should have been a party in this lawsuit, but

---

[4] Some district courts within the Seventh Circuit have determined that the John Doe rule did not survive *Krupski*. *See, e.g., Haroon v. Talbott*, No. 16-CV-04720, 2017 WL 4280980, at *7 (N.D. Ill. Sept. 27, 2017). The Seventh Circuit has continued to recognize and apply the John Doe rule without addressing the potential implications of *Krupski*. *See Gomez v. Randle*, 680 F.3d 859, 864 n.1 (7th Cir. 2012) (suggesting in dicta that the John Doe rule is still good law); *Vance v. Rumsfeld*, 701 F.3d 193, 211 (7th Cir. 2012) (Wood, J., concurring) (same); *Flournoy v. Schomig*, 418 Fed.Appx. 528, 532 (7th Cir. 2011) (applying John Doe rule and affirming denial of motion to amend).

for Plaintiff's mistake. Defendants' arguments focus, incorrectly, on Plaintiff's mindset. Plaintiff argues that his lack of knowledge regarding Defendant Horn's identity is the exact type of mistake outlined in *Krupski*, citing to *Brown v. Deleon*, 11-cv-6292, 2013 WL 3812093, at *6 (N.D. Ill. July 18, 2013) ("*Krupski* supports that inadequate knowledge and lack of full information regarding a defendants' identity satisfies the mistake requirement for Rule 15(c)(1)(C)") (Doc. 104, p. 15).

Plaintiff alleges that Defendant Horn, not Stallings, was working in Plaintiff's segregation unit during the December 2014 attack (Doc. 104-3). Plaintiff argues that this means Defendant Horn knew or should have known he would be party to this lawsuit were it not for a mistake. At first glance, this appears to be quite the logical leap, because knowledge of an attack, even if he was involved, does not equate knowledge of a lawsuit.

In defense of his argument, Plaintiff cites to a case out of the Southern District of New York that found that a defendant had constructive notice of a lawsuit for purposes of relation back since he was represented by the Attorney General's office, who represented all of the defendants in that case (Doc. 104, p. 11, citing *Roland v. McMonagle*, No. 12-cv-6331, 2014 WL 2861433, at *4 (S.D.N.Y. June 24, 2014)).[5] While not governing in this Court, it is a persuasive argument as the only way Plaintiff was able to identify Defendant Horn was when the Attorney General's office produced the segregation roster

---

[5] This case held that relation back under Rule 15(c)(1)(C) was appropriate based on constructive notice to the attorney general's office when it knew or should have known about certain defendants because plaintiff's "allegations adequately described the officers whom he intended to sue, even if he was mistaken as to their names, and placed the AG's office on notice that it needed to investigate the relevant records to determine those officers' identities and prepare a defense". *Id.*

for December 28 (Doc. 104-4).   It was only then that Plaintiff was able to determine that Horn, not Stallings, was working that day (Doc. 104, p. 14). Defendants' counsel possessed the information, and knowledge, necessary to identify Defendant Horn. Additionally, Defendants had possession of the Internal Affairs report, which showed that Defendant Horn was interviewed on January 12, 2015 about the attack on Plaintiff (Doc. 104-3). Again, while this is not knowledge of the lawsuit, *per se*, it does show that Defendants had in their possession materials that would have allowed Plaintiff to identify the appropriate Defendant and show that at least Defendants' counsel knew, or should have known, that Stallings was not present in Plaintiff's unit on December 28, 2014 and, therefore, could not have been the appropriate Defendant.

Plaintiff's arguments are particularly persuasive in light of the procedural posture of this case, where Plaintiff first asserted arguments regarding the doctrine of relation back in his motion for leave to amend his complaint, filed on September 20, 2018 (Doc. 68). As argued there, Plaintiff did not learn of the true identity of the Officer who attacked him on December 28 until he received the segregation roster and Horn and the other Defendants were listed, but Stallings was not (Doc. 68-5). Plaintiff first attached the roster and Internal Affairs report to his motion for leave to amend. Defendants did not oppose that motion. Once in the case, Defendants Horn and Hobbs did not raise these arguments as affirmative defenses in their answer to Plaintiff's complaint (Doc. 88). While failure to

assert an affirmative defense is not fatal to a case, failure to do so weakens Defendants' arguments that the claims brought against them are prejudicial.[6]

The Supreme Court noted that Krupski's misunderstanding was "*clearly a 'mistake concerning the proper party's identity'*" because the plaintiff lacked full information and knowledge regarding the defendants' identity. *Id.* at 555 (emphasis added). *Krupski* dictates that substitution of an individual defendant can relate back under Rule 15(c) when there is a mistake based on inadequate knowledge. *Krupsiki*, 550 U.S. at 548-549. There is no mistake, however, when a plaintiff makes a deliberate choice to sue one party instead of another, fully informed of the factual and legal differences of the parties. *Id.* at 549. It is clear that here, like in *Krupski,* Plaintiff made a mistake as to the identification of Defendant Horn due to circumstances out of his control. Once Plaintiff learned of the correct Defendants' identities, he promptly substituted in Defendants Hobbs and Horn. The record indicates the both Defendants had, or should have had, knowledge of this lawsuit within the Rule 4(m) period. For the aforementioned reasons, the claims against Defendants Hobbs and Horn relate back under Rule 15(c) and are, therefore, timely.

IV.   Equitable Tolling

The doctrine of equitable tolling excuses an untimely submission if, despite the plaintiff's exercise of reasonable diligence, some extraordinary circumstance prevented him from meeting the prescribed deadline. *See Blanche v. United States*, 811 F.3d 953, 962

---

[6] Plaintiff makes a compelling argument here as well, stating that this is an older case and all of the Defendants currently experience the same issues in terms of finding witnesses to provide testimony about events that occurred in 2014. Defendants Horn and Hobbs are not unique in facing those challenges (Doc. 104, pp. 11-12).

(7th Cir. 2016). The plaintiff bears the burden of establishing both his diligent pursuit of his claim and the extraordinary circumstances that prevented him from timely filing his complaint. *Id. See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The bar for obtaining equitable tolling is high, and the doctrine does not extend to a "garden variety claim of excusable neglect." *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Defendants assert that because the doctrine of relation back does not apply, Plaintiff will likely argue that equitable tolling should apply to cover his claims. As the Court has already demonstrated that relation back does, in fact, apply here and Plaintiff's claims against Defendants are not barred by the statute of limitations, equitable tolling does not apply to Plaintiff's claims.

## CONCLUSION

For the above-stated reasons, Defendants Hobbs and Horn's motion for summary judgment is **DENIED**. Plaintiff's claims against all Defendants (Wiggs, Jones, Hobbs, and Horn) will proceed. The Court will set this matter for a status conference in the near future to discuss the utility of scheduling a mediation and a final pretrial conference and jury trial will be set by separate order.


**IT IS SO ORDERED.**

**DATED: November 13, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**